**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DITRICT OF MICHIGAN**

| | | |
|---|---|---|
| SERENITY POINT RECOVERY, INC. | ) | Case No. 1:19-cv-00620 |
| A FOREVER RECOVERY, | ) | |
| BEHAVIORAL REHABILITATION | ) | Hon. Janet T. Neff |
| SERVICES, BEST DRUG REHABILITATION, | ) | |
| | ) | |
|      Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| BLUE CROSS, BLUE SHIELD OF MICHIGAN, | ) | |
| | ) | |
|      Defendant. | ) | |
| | ) | |

**<u>Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss</u>**

## <u>Table of Contents</u>

Table of Contents ..................................................................................................... ii

Table of Authorities ................................................................................................ iii

I.    Background ........................................................................................................ 1

II.   Argument ........................................................................................................... 3

  i.    Legal Standard .............................................................................................. 3

  ii.   The Claims at Issue ....................................................................................... 4

  iii.  Plaintiffs Have Standing to Sue BCBSM Under ERISA Section 502(a)(1)(B) for All
  Claims at Issue ..................................................................................................... 7

  iv.   Anti-Assignment Clauses ........................................................................... 10

  v.    Administrative Remedies ............................................................................ 15

  vi.   Defendants' Failure to Comply with this Court's Prior Order ...................... 17

III.  Conclusion ....................................................................................................... 18

## Table of Authorities

*Cases*

*Allen v. Michigan Bell Tel. Co.*,
    171 N.W.2d 689, 692 (Mich. App. 1969) _____ 12

*American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*,
    890 F.3d 445, 454-455 (3d Cir. 2018) _____ 13

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) _____ 2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007) _____ 2

*Central Laborers' Pension Fund v. Heinz*,
    541 U.S. 739, 743 (2004) _____ 14

*Clark v. DaimlerChrysler Corp.*,
    706 N.W.2d 471 (Mich. App. 2005)_____ 11

*Conley v. Gibson*,
    355 U.S. 41, 47 (1957) _____ 2

*Costantino v. TRW, Inc.*,
    13 F.3d 969, 975 (6th Cir. 1994) _____ 14

*Cromwell v. Equicor-Equitable HCA Corp.*,
    944 F.2d 1272, 1277 (6th Cir. 1991) _____ 3

*Daniel v. Eaton Corp.*,
    839 F.2d 263, 266 (6th Cir.1988) _____ 7

*Fair Elections Ohio v. Husted*,
    770 F.3d 456, 459 (6th Cir. 2014) _____ 3

*Fallick v. Nationwide Mut. Ins. Co.*,
    162 F.3d 410, 419 (6th Cir. 1998) _____ 14, 16

*Gallagher v. Empire HealthChoice Assurance, Inc.*,
    339 F. Supp. 3d 248 (S.D.N.Y. 2018)_____ 7

*Gavitt v. Born*,
    835 F.3d 623, 640 (6th Cir. 2016) _____ 3

*Gore v. El Paso Energy Corp. Long Term Disability Plan*,
    477 F.3d 833, 842 (6th Cir. 2007) _____ 7

*Hermann Hospital v. MEBA Medical & Benefits Plan*,
  845 F.2d 1286 (5th Cir.1988) _____ 4

*Hill v. Blue Cross & Blue Shield of Mich.*,
  409 F.3d 710, 722 (6th Cir. 2005) _____ 15

*Hitchcock v. Cumberland Univ. 403(b) DC Plan*,
  851 F.3d 552, 560 (6th Cir. 2017) _____ 14

*Luckey v. Blue Cross Blue Shield of Michigan*,
  2012 WL 2190833 (E.D. Mich. June 14, 2012) _____ 13

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555, 560 (1992) _____ 3

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871, 889 (1990) _____ 3

*Maple Manor Rehab. Ctr., L.L.C. v. Care Choices*,
  2006 WL 2130547, at *5 (E.D. Mich. July 28, 2006) _____ 14

*Mediacom S.E. LLC v. BellSouth Telecomm., Inc.*,
  672 F.3d 396, 399 (6th Cir. 2012) _____ 3

*Michigan Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Michigan*,
  139 F.3d 546, 550 (6th Cir. 1998) _____ 3

*N. Cypress Med. Ctr. Operating Co. v. Blue Cross Blue Shield of Texas*,
  2010 WL 4025967 (S.D. Tex. Oct. 13, 2010)_____ 4, 6

*Nichols v. Muskingum Coll.*,
  318 F.3d 674, 677 (6th Cir. 2003) _____ 3

*Pitman v. Brinker Intern., Inc.*,
  216 F.R.D. 481 (D. Ariz. 2003) _____ 16

*Ravencraft v. UNUM Life Ins. Co. of Am.*,
  212 F.3d 341, 343 (6th Cir.2000) _____ 15

*Riverview Health Institute LLC v. Medical Mutual of Ohio*,
  601 F.3d 505 (6th Cir. 2010) _____ 13

*Rouse v. Farmers State Bank of Jewell, Iowa*,
  866 F. Supp. 1191, 1198 (N.D. Iowa 1994) _____ 17

*Smith v. Provident Bank*,
  170 F.3d 609, 613 (6th Cir.1999) _____ 7

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,

iv

554 U.S. 269, 272 (2008) _____ 4

*St. Luke's Episcopal Hosp. v. Louisiana Health Serv. & Indem. Co.*,
    2009 WL 47125, at *12 (S.D. Tex. Jan. 6, 2009) _____ 8

*Thompson v. Am. Home Assur. Co.*,
    95 F.3d 429, 435 (6th Cir. 1996) _____ 2, 11

*Wallace v. Oakwood Healthcare, Inc.*,
    954 F.3d 879, 887 (6th Cir. 2020) _____ 16

*Wallis v. United States*,
    102 F. Supp. 211, 212 (E.D.N.C. 1952) _____ 14

*Wright Farms Const., Inc. v. Kreps*,
    444 F. Supp. 1023 (D. Vt. 1977)_____ 9

**Statutes**

ERISA § 502(a)(1) _____ 7, 15

Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA") _____ 7, 8

**Rules**

Fed. R. Civ. P. 12(d) _____ 3

Fed. R. Civ. P. 19 _____ 11

Fed. R. Civ. P. 56 _____ 3, 4

**Regulations**

26 C.F.R. § 54.9812-1(c)(4)(ii)_____ 13

29 C.F.R. § 2560.503-1 (l)(1) _____ 20

29 C.F.R. § 2560.503-1(c)(2) _____ 19

29 C.F.R. § 2590.712(c)(4)(ii) _____ 10, 13

45 C.F.R. § 147.128(a)(1)_____ 15

45 C.F.R. § 146.136(c)(4)(ii) _____ 13

I.       **Background**

Plaintiffs' case is essentially one of accounting and collections brought by four Michigan-based mental health and substance use disorder treatment providers. It involves the insurance benefits of more than 4,200 patients whose claims for benefits were all subject to direct processing by BCBSM. Plaintiffs seek competent processing of those claims and proper reimbursement from Defendant for amounts owed as well as creation of a plan for proper processing of claims in the future. Suit was necessitated after lengthy negotiations failed with Defendant and its in-house counsel.

Plaintiffs have standing to bring suit on behalf of their patients as their attorney-in-fact, having obtained valid durable healthcare powers of attorney from each patient. In the alternative, Plaintiffs also have standing to bring suit in this Court pursuant to valid, assignment of benefits for patients with ERISA regulated plans. (ECF 1 ¶¶ 5, 28, & 102) This renders any issues of derivative standing moot. Plaintiffs are attorneys-in-fact as well as are assignees as for their patients. As their attorneys-in-fact, they stand in their patients' shoes as is the ERISA claims were brought by the patients themselves.

The Plaintiffs have endeavored to abide by this Court's Order that focused on the efficient stewardship of this litigation and conservation of judicial resources [ECF 17]. Ignoring this Court's Order and clear directive, Defendant argued for and later served an all-encompassing motion to dismiss that essentially seeks to litigate the entire case in one enormous leap.

The Court set forth a limited and tailored briefing scope and schedule that specifically directed Defendant to limit their motion to dismiss to "the issue of Plaintiffs' standing to pursue the ERISA claim, which the Court determines to be the foremost threshold legal issue." [ECF 21, Pg. 1] Further indicating the Court's narrow intent, it was also ordered that "the parties shall

exchange power of attorney and anti-assignments exemplars, and any others, necessary to brief and resolve the issue of standing.

Plaintiffs provided exemplars of power of attorney forms from actual Plaintiffs in this case and identified the individual Plaintiffs to whom these examples belonged.  Defendant, on the other hand, has provided alleged exemplars of BCBSM plans without identifying which, if any, of the actual Plaintiffs these plans related to (quite possibly none of them), and irrelevant BlueCard corporate documents.  Whether any of the sample plans produced by Defendant actually relate to any of the actual Plaintiffs in this case remains to be seen.  Plaintiffs requested that Defendants identify which Plaintiffs the plans relate to and that request was ignored.  Whether any of the plans produced by Defendant actually relate to any of the Plaintiffs is still an open question of fact. These unidentified "anonymous" plans should not be relied upon in support of a motion to dismiss.

In addition, all of the plan documents Defendant produced are from <u>fully-insured</u> plans only, not from self-funded employer plans, so whether any of the sample plans are even subject to ERISA and relevant to this motion to dismiss is still unknown.  Many self-insured plans are purchased off individual marketplaces and are exempt from ERISA and even many fully-insured employer plans are exempt from ERISA under ERISA's safe harbor clause. *See, for example, Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 435 (6th Cir. 1996).  It is a very real possibility that none of the sample plans produced as exemplars by Defendant are even ERISA plans.

The answers to these questions will only be found through extensive discovery and are probably best analyzed and resolved with the appointment of a special master.  It is difficult to imagine how they would be resolved at the pleading stage.  Interestingly, all of the anonymous plans produced by Defendant contain specific  language explicitly excluding coverage for out-of-network mental health and substance use disorder treatment facilities. As such, none of the plans

produced by Defendant, on their face, even apply to the claims at issue.

Despite all of this and clear direction from the Court, Defendant's Motion to Dismiss [ECF 22] attempts to litigate the entire case through a motion to dismiss, a motion that runs to more than 750 pages with exhibits. However, as shown below, each argument in this bloated and corpulent motion lacks merit and Defendant's motion should be denied in its entirety.

## II.   Argument

### i.   Legal Standard

Dismissal for failure to state a claim is appropriate when the complaint fails " 'to give the defendant fair notice of what the... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint does not need to contain detailed factual allegations, however, the it must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, the Court generally does not consider matters outside the pleadings unless the Court treats the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *see also*, Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6)..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). *See also, Mediacom S.E. LLC v. BellSouth Telecomm., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012) (even though defendant's production directly contradicted factual issues in the complaint, the complaint still raised genuine issues of material fact and went beyond "threadbare" conclusory allegations).

As to Article III standing, the United States Supreme Court has held that "the irreducible

constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must have suffered "[1] an injury in fact, [2] fairly traceable to the defendant's conduct, [3] that is likely to be redressed by a favorable decision from the court." *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014). At the pleading stage, plaintiff's general factual allegations may suffice since, on a motion to dismiss, the court presumes "that general allegations embrace those specific facts that are necessary to support the claim" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990); *see also*, *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

Statutory standing under ERISA is provided to 'participants or beneficiaries' to bring ERISA claims under § 1132. *See, for example, Michigan Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Michigan*, 139 F.3d 546, 550 (6th Cir. 1998). However, "[a] health care provider may assert an ERISA claim as a "beneficiary" of an employee benefit plan if it has received a valid assignment of benefits." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991) *citing Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286 (5th Cir.1988). It is well recognized that an attorney-in-fact, when granted such power, has standing and authority to bring suit and litigate on behalf of the principal. *See, for example, Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 272 (2008).

ii.     *The Claims at Issue*

Plaintiffs' claims are for the processing and reimbursement to Plaintiffs of the insurance benefits of more than 4,000 patients. All of these claims were subject to direct processing by BCBSM. Plaintiffs seek processing and reimbursement from the Defendant for past due amounts owed and the creation of a plan for proper payment of claims in the future. Going far beyond the claims at issue and the actual pleadings, Defendant raises an entirely specious and inappropriate

4

argument regarding the "BlueCard" Program relying on a misplaced citation to *N. Cypress Med. Ctr. Operating Co. v. Blue Cross Blue Shield of Texas*, 2010 WL 4025967 (S.D. Tex. Oct. 13, 2010), a ten-year-old, unpublished decision of a district court in the Fifth Circuit on a motion for summary judgment that addresses an entirely separate issue brought by a non-insurer. Further, the *N. Cypress* decision does not address the fiduciary duties of "BlueCard" plans that give rise to Defendant's liability as alleged in Plaintiffs' Complaint.

Plaintiffs have made the following allegations in their Complaint, allegations that are taken as true for the purpose of a motion to dismiss:

- Plaintiffs submitted claims for all patients on the UB04 form to Defendant (¶¶ 29, 31, 38, 79).

- That Defendant was responsible for all provider-related functions such as all claims processing, payment, customer service issues, adjustments, and appeals, regardless of the "home" plan (¶ 31).

- Defendant was responsible for processing payments to Plaintiffs (¶ 33).

- Plaintiffs dealt solely with Defendant over a period of four years regarding the processing and payment of the claims at issue in this litigation (¶ 35).

- It was Defendant that failed to process and rejected Plaintiffs' claims (¶ 39)

- Defendant agreed to process Plaintiffs' claims via paper submissions through US Mail. (¶ 41, 68)

- Plaintiffs filed the necessary appeals with Defendant (¶¶ 45, 66).

- Plaintiffs had multiple meetings and discussions with Defendant's representatives regarding these claims (¶¶ 46, 49-54, 67, 69-72).

- Defendant breached the terms of the ERISA plans and fiduciary duties it owed to Plaintiffs by refusing to pay or correctly process Plaintiffs' claims (¶ 95).

Defendant's motion describes, at some length, what it represents are the roles, responsibilities, and duties of "host" and "home" plans and relies upon BlueCard documents to support their argument. While the insurance plans themselves *are* incorporated into the Complaint

for purposes of Plaintiffs' ERISA claims, the BlueCard documents are not insurance plans, they are completely outside of the pleadings. Plaintiffs have not had the opportunity to engage in discovery regarding 'BlueCard' operations and the actions taken by "host" and "home" plans. Defendant asks the Court to consider a document outside the pleadings as gospel truth for what actually occurred. It would be difficult for Defendant to prevail on this argument on a motion for summary judgment and it is entirely inappropriate at the pleading stage.

"The BlueCard program does not grant BCBSM (or any other entity) any control over the decisions of the participants' Home Plans, and the Home Plans remain ultimately responsible to their own participants with respect to the terms of their participants' plans." Mot. Pg. 7. This parol evidence has not been the subject of any discovery. Plaintiffs have not yet taken the depositions of Defendant's representatives or issued discovery to them regarding the specific actions taken by Defendant that Plaintiffs allege constitute their breach of fiduciary duties. Even if these parol documents could be taken as gospel truth with absolute knowledge that every action the "home" and "host" plans took was exactly as laid out in the documents, they would still be outside of the pleadings and ineligible to be considered at the pleading stage.

Further, the *N. Cypress* case does not stand for the proposition Defendant cites to it for. It does not create some form of *res judicata* and/or collateral estoppel as to the "home" and "host" plan relationship and duties. *N. Cypress* ruled for summary judgment in favor of Blue Cross Blue Shield Association. The Association "is the trademark corporation that administers the licensing of the 'Blue Cross' and 'Blue Shield' registered trademarks" and "[t]he Association is never a "home" plan or a "host" plan, and has no role in the actual processing of claims under the Blue Card program." *Id.* at *1. There, the Court accepted the Associations' argument that "[the Association] had nothing to do with the receipt, processing, adjudication or payment of any of the

claims identified" *Id.* (emphasis added). Plaintiffs have not sued the Association and Defendant's motion makes no mention of the Association. By contrast, here, Plaintiffs' have alleged in detail, as described above and through Plaintiffs' Complaint, that Defendant was responsible for the receipt, processing, adjudication, and payment of Plaintiffs' claims.

    iii.    *Plaintiffs Have Standing to Sue BCBSM Under ERISA Section 502(a)(1)(B) for All Claims at Issue*

        ERISA is far more than a single "reed" as alleged by Defendant as Plaintiffs' believe that for most of the claims at issue the patients had ERISA plans. The majority of patients' plans are ERISA regulated plans.

        Defendant's Motion's very first argument misstates the pleadings by claiming "BCBSM did not issue those [non-BCBSM] plans, does not control what benefits are paid under those plans, and cannot enforce the terms of those plans." Plaintiffs do not assert that Defendant issued non-Michigan plans; however, as described *supra,* Plaintiffs' pleadings *do* allege that Defendant controls what benefits are paid and does "enforce" the plans. Defendant's arguments to the contrary are factual issues that go far beyond the pleadings and are inappropriate at this stage of the proceedings.

        As to Article III and ERISA standing, Defendant's citation to *Gore v. El Paso Energy Corp.* does not stand for the broad proposition Defendant's use it for, to claim Plaintiffs have neither Article III nor ERISA standing to bring these claims. The language cited to (Def. Mot. Pg. 2, 11, 12) states, "[u]nless an **<u>employer</u>** is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 842 (6th Cir. 2007) *quoting Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.1988) (emphasis added). Defendant is not an alleged to be an employer controlling the administration of the plan.

As asserted by Plaintiffs in their complaint, prior to filing suit, they met with Defendant's representatives multiple times to resolve these claims. (ECF 1 ¶4). At no time were Plaintiffs directed to a "home plan" by Defendant regarding these claims. The allegations made by Plaintiffs in their Complaint are sufficient, at the pleading stage, to support the position that Defendant was acting as a fiduciary for all of the claims at issue and not merely performing 'ministerial' functions. *See, for example, Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999) ("the definition of a fiduciary under ERISA is a functional one, is intended to be broader than the common law definition, and does not turn on formal designations such as who is the trustee.")

Further, Plaintiffs have ERISA standing as they have alleged facts that support an ERISA claim for violation of the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), not just ERISA § 502(a)(1). Violations of the MHPAEA are ERISA claims and may be brought by plan participants. *See, for example, Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248 (S.D.N.Y. 2018) (Finding ERISA plan participant's allegations were sufficient to state a breach of fiduciary duty claim based on administrator's Parity Act violation).

Specifically, the MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii). Impermissible nonquantitative treatment limitations under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, plan methods for determining usual, customary, and reasonable charges, and other criteria that limit the scope or duration of benefits

8

for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii). Plaintiffs specifically assert that Defendant determined the amount of usual, customary, and reasonable charges and applied them to vastly underpay the claims at issue that were paid at all. The other restrictions and actions that led to inappropriate claim denials were, as alleged in the Complaint, taken by Defendant.

Further, should the Court determine that the "home" plans' administrators are necessary defendants for a given claim, the Plaintiffs argue that, given the allegations against Defendant, Fed. R. Civ. P. 19 would apply and Plaintiffs would request that the Court permit Plaintiffs to join to the "home" plan administrators to the present action. It is well established that this Court would have personal jurisdiction over the additional defendants as to Plaintiffs' ERISA claim and joinder is feasible. *See, for example, St. Luke's Episcopal Hosp. v. Louisiana Health Serv. & Indem. Co.*, 2009 WL 47125, at *12 (S.D. Tex. Jan. 6, 2009) (holding personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process requires minimum contacts with the United States (multiple citations)); *Wright Farms Const., Inc. v. Kreps*, 444 F. Supp. 1023 (D. Vt. 1977) (holding that for failure to join a party, joinder, rather than dismissal for failure to join, is a proper way to proceed, if possible).

For all of the above reasons, Plaintiffs have Article III standing (alleging injury by underpayment and nonpayment, alleging that Defendant's conduct was the cause of the underpayment and nonpayment, and that a favorable decision will have Defendant, as a fiduciary, remit proper payment) and ERISA standing through valid assignment of benefits by their patients.

Plaintiffs have alleged that Defendant's administrative and payment decisions and inept payment processing systems, over which Defendant has sole authority, have directly harmed the Plaintiffs. The only decisions made by the "home" plans, as alleged in the Complaint, were

determinations as to medical necessity of coverage. Decisions as to medical necessity are not at issue as none of the claims in the present litigation have been denied for medical necessity or any clinical reason. In every instance the "home" plan found that the patients' claims met clinical criteria and directed Defendant to process the claims for payment, something Defendant still has not adequately done.

Plaintiffs have alleged that Defendant has exclusive responsibility for payment processing of all BlueCard member patient claims submitted to it by providers located in Michigan, regardless of the identity or location of the "home" plan. BCBSM knows this and its own inter-plan documents prove this. This shifting of payment responsibility is the entire purpose of the BlueCard network and the reason that Blue Cross Blue Shield plans are portable from state to state.

Defendant has sole and complete control over processing payments of all BlueCard network claims submitted by Michigan providers. All patient claims underlying this suit were submitted directly to Defendant for payment by the Michigan provider Plaintiffs in direct compliance with the terms of the BlueCard network, not to any other Blue Card entity. Redressability is thus clearly met. A favorable outcome in this matter will remove Defendant's administrative hurdles and require proper payment of the patient claims at issue at whatever the appropriate rate is found to be.

*iv.*    *Anti-Assignment Clauses*

As argued *supra*, the relevant plans, especially at the pleading stage, are the plans for all of the claims and not just Defendant's plans and Defendant is therefore incorrect in claiming that Exhibits 1-5 address "all potential plan designs at issue here." (Def. Mot. Pg. 7). Defendant claims that each of their plans "contains an unambiguous anti-assignment clause explicitly prohibiting participants from assigning to providers, like Plaintiffs here, their right to payment or any claim or

cause of action against BCBSM." This is a bald legal conclusion that is not actually supported by the examples given in their motion.

The plans Defendant produced are immaterial to Plaintiffs' claims and in violation of this Court's prior Order [ECF 21]. The 47 plans that Defendant produced all explicitly exclude mental health and substance use disorder benefits for out-of-network facility-based providers, including Plaintiffs. Plaintiffs have alleged in their Complaint that they verified benefits with Defendant prior to rendering any services. If the patients' plans had actually included such exclusions, Defendant would have disclosed this and not been able to verify the patients' benefits.  Therefore, the sample plans produced by Defendant clearly do not relate to this case.

Under the policies own terms, either none of the claims arose for patients with the policies produced by Defendant[1] or Defendant has waived their rights under the policy. Further, such exclusions are impermissible non-quantitative treatment limitations (NQTLs) under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA), as amended by the Affordable Care Act (ACA). Under MHPAEA regulations, a plan or issuer may not impose an NQTL on MH/SUD benefits unless they are comparable to, and are applied no more stringently than, those used in applying the limitation with respect to medical / surgical benefits in the same classification. Federal MHPAEA regulations set this forward in greater detail. *See* 26 CFR 54.9812-1(c)(4)(ii); 29 CFR 2590.712(c)(4)(ii); 45 CFR 146.136(c)(4)(ii).

Defendant has produced only BCBSM plans and failed to produce *any* plan documents

---

[1] The policies produced by Defendant contain the following language: "BCBSM does not pay for services at nonparticipating: •Outpatient physical therapy facilities •Mental health or substance abuse treatment facilities • Freestanding ambulatory surgery facilities • Freestanding ESRD facilities • Home health care agencies • Hospice programs • Long-term Acute Care Hospitals • Skilled nursing facilities, or •Ambulatory infusion centers. If you need to know if a provider participates, ask your doctor, the provider's admitting staff, or call us. (Use the numbers listed in Section 8: "How to Reach Us".)"

from self-funded plans. All of the plans produced by Defendant were 'fully-insured' plans and whether such plans are governed by ERISA or subject to its safe-harbor provision is a factual question that cannot be resolved at the pleading stage. *See, e.g., Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 435 (6th Cir. 1996) (setting forth the Department of Labor regulations that form the safe-harbor provision excluding employee insurance policies from ERISA coverage[2].)

Further, the policies that were actually provided by Defendant all contain language that renders the anti-assignment provision void on the basis on unconscionability. Each policy provided by Defedant states, "[a]ny attempt to assign [your benefits] will ***automatically*** terminate all your rights under this certificate." (emphasis added). This contract term is unconscionable. A contract term is unconscionable if it is procedurally unconscionable and substantively unconscionable. *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471 (Mich. App. 2005). A term is procedurally unconscionable if the "weaker" party has no reasonable prospect of changing or negotiating that term (*i.e.* contracts of adhesion). *Id*. A term is substantively unconscionable if it "shocks the conscience," violates public policy, or violates a law. *Id*. It is well-established practice across the healthcare industry for an out-of-network provider to have patients execute an assignment of benefits. Defendant and all insurers are well aware of this fact.

However, under all of the BCBSM sample policies, an insured's attempt to assign the right to dispute claims denials to the entities most qualified to do so triggers an absolute forfeiture and rescission of benefits under the plan. Taken to its logical conclusion, where patients assign right to payment of benefits to practically every healthcare provider in the state, BCBSM *automatically*

---

[2] "(1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction. 29 C.F.R. § 2510.3–1(j). A policy will be exempted under ERISA only if all four of the "safe harbor" criteria are satisfied." *Id.*

terminates coverage for every patient who seeks healthcare. *Allen v. Michigan Bell Tel. Co.*, 171 N.W.2d 689, 692 (Mich. App. 1969) (freedom of contract does not permit inclusion of any term that is advantageous to one party, and courts may consider public policy and law when evaluating a contract term). Not only does this violate a public policy interest in having insured Michigan employees, it also violates the Patient Protection and Affordable Care Act's prohibitions on rescission.

Under the applicable Federal regulations, 45 C.F.R. § 147.128(a)(1), "Rules Regarding Rescissions," "[A] group health plan… ***must not rescind coverage under the plan***… with respect to an individual… once the individual is covered under the plan or coverage." Rescission is a retroactive cancellation of payable benefits. Assignments in this case were each executed during the pendency of other benefits, as such an immediate termination precluding claims payment is a forbidden retroactive benefits termination. *Id*. This contributes not only to a *per se* illegal business practice, but also constitutes a substantively unconscionable provision. As such the anti-assignment provisions in the plans Defendant produced are void and/or unenforceable.

Addressing Defendant's argument that *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505 (6th Cir. 2010) prevents Plaintiffs from asserting that Defendant has waived their rights as to anti-assignment provisions, Defendant misapplies *Riverview Health*. In *Riverview Health* the plaintiffs argued that the anti-assignment provision was not dispositive because defendant failed to establish that it provided documentation of the anti-assignment provision to its insureds. That is not the argument made by Plaintiffs here. In the present case, Plaintiffs have alleged a substantial course of dealing, communications, and representations made by Defendant to them and the insureds. This is clearly distinguishable from *Riverview Health*. The situation is more closely akin to that of *Luckey v. Blue Cross Blue Shield of Michigan*, 2012 WL 2190833

13

(E.D. Mich. June 14, 2012). In that case, the patient's balance-bill obligations, after executing an assignment of benefits, were sufficient to confer standing on him. Further, the court found that plaintiff, Pharmacy Matters had alleged sufficient facts and legal theories based on prior dealings with BCBSM to confer standing on them despite an anti-assignment provision in the policy.

Should the Court find the anti-assignment provisions of some or all of the relevant plans defeats Plaintiffs' derivative standing, then, the appropriate remedy is not dismissal but to permit Plaintiffs to substitute themselves as representatives of the patients based on valid powers of attorney that were obtained.

As was recently discussed, at length, by the Third Circuit, that Court that held that an anti-assignment clause reflects the power to restrict the rights created by contract, and can defeat an attempt to transfer standing by assignment, the clause does not, however, defeat execution of a power of attorney for representation of the original right holder. *American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 454-455 (3d Cir. 2018) ("we reject the Insurers' contention that the presence here of a valid anti-assignment clause renders futile any remand for Appellant to perfect its power of attorney.") Defendant's motion fails to address why this Court should not reach the same conclusion as its sister circuit on the same issue of law.

It is well established that when a suit is brought on behalf of the wrong party, that the real party in interest may be substituted as plaintiff. *See, for example, Wallis v. United States*, 102 F. Supp. 211, 212 (E.D.N.C. 1952). Further, the individual patients have been harmed by Defendant's actions, as alleged in the Complaint, as their breach of fiduciary duty to the patients gave rise to the patients owing Plaintiffs balance bills in significantly greater amounts than they should have been.

v.      *Administrative Remedies*

Defendant loses sight of one of ERISA's core legal principles, "the centrality of ERISA's object of protecting employees' justified expectations of receiving the benefits their employers promise them." *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 560 (6th Cir. 2017) *quoting Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 743 (2004).

Defendant's allegation that Plaintiffs' Complaint fails to show exhaustion of administrative remedies is both legally and factually incorrect. Plaintiffs have plead in painstaking detail that they have exhausted administrative remedies as required by ERISA and, in the alternative, have shown that exhaustion would have been futile. *See* ECF 1 ¶¶ 45, 46-51, 65-73 (explicitly stating that appeals were submitted, Plaintiffs complying with Defendant's requirements that exceeded those required by the plans, and describing the steps taken by Plaintiffs in submitting claims to Defendant **six (6)** times). All of this shows that the administrative exhaustion requirements were not only met but exceeded.

"ERISA does not state whether exhaustion of administrative remedies is required before bringing a civil action. However, due to ERISA's provision for the administrative review of benefits, [the Sixth Circuit has] read an exhaustion of administrative remedies requirement into the statute." *Maple Manor Rehab. Ctr., L.L.C. v. Care Choices*, 2006 WL 2130547, at *5 (E.D. Mich. July 28, 2006) (internal quotations and citations omitted). However, the Sixth Circuit has also clearly established that there is an exception to the administrative exhaustion requirement "when resort to the administrative route is futile or the remedy inadequate." *Id. quoting Costantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994); *see also, Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998) ("[a]lthough ERISA's administrative exhaustion requirement for claims brought under [ERISA] § 502 is applied as a matter of judicial discretion, a court is obliged

15

to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate.")

The Federal Regulations interpreting ERISA state that no more than two administrative appeals may be required of claimants. *See* 29 C.F.R. § 2560.503-1(c)(2) ("[t]he claims procedures do not contain any provision, and are not administered in a way, that requires a claimant to file more than two appeals of an adverse benefit determination prior to bringing a civil action under section 502(a) of the Act"). The purpose of administrative appeals is that "review or exhaustion enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions" *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 722 (6th Cir. 2005) *quoting Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir.2000). Further, "claims for individual benefits under § 1132(a)(1)(B) will require an examination of the particular facts and circumstances pertaining to Plaintiffs' signs and symptoms at the time… treatment was provided." *Hill* at 722–23. That examination involves a fact determination more appropriately addressed at the summary judgment stage. Defendant's thin arguments regarding exhaustion of remedies is premature and Plaintiff's allegations regarding administrative remedies is adequately pled.

Further, having complied with Defendant's requests that exceeded plan requirements and submitting the same claims **six (6)** times to Defendant and BCBSM *still* failing to properly process and pay the claims, any further steps would clearly have been futile. When Defendant denied the claims, after the sixth submission [ECF 1 ¶73] any further submissions and steps taken by Plaintiffs would have been futile. When there is "clear and positive evidence of the futility of exhausting the Plan's administrative remedies," requiring further appeals is contrary to the purpose of exhaustion and no longer required. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 420 (6th Cir. 1998).

Defendant's actions as to administrative remedies rendered the exhaustion requirement futile.

Plaintiffs have also alleged that Defendant has failed to follow claims procedures consistent with ERISA. ERISA's statutory language addresses such failure and how it equates to futility:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

> 29 C.F.R. § 2560.503-1 (l)(1)

This is also the case in Sixth Circuit precedent that holds, in such cases, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan" *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 887 (6th Cir. 2020) *quoting* 29 C.F.R. 2560.503-1(l) (2003). Plaintiffs have alleged in detail the many ways that Defendant has failed to follow ERISA claims procedures consistent with ERISA and its implementing regulations and, ultimately, that is why this case has been filed.

For all of the above, Plaintiffs have sufficiently alleged exhaustion of administrative remedies and/or the futility of doing so at this stage of pleading.

vi.   *Defendants' Failure to Comply with this Court's Prior Order*

Based on the foregoing, it is clear that Defendant failed to abide by this Court's January 13, 2020 Order [ECF 21] to limit its motion to the issue of ERISA standing. , given the lengthy Pre-Motion Conference and briefing, can only be seen as a deliberate and contumacious disregard of this Court and its authority. Defendant's actions are of the type that merit sanctions be imposed pursuant to Fed. R. Civ. P. 16(f)(C) for when a party or their attorney "fails to obey a scheduling or other pretrial order." Sanctions are appropriate when, as here, the conduct is intentional but may also be imposed even when the conduct is unintentional. *See Pitman v. Brinker Intern., Inc.*, 216

17

F.R.D. 481 (D. Ariz. 2003). The only parts of Defendant's motion that actually addresses, and, even then, incorrectly, the intended scope as to the issue of standing are Section II (B) and (C).

Defendant intentionally went far beyond the Court's intended scope despite clear direction from to address a narrow threshold issue of standing at the outset. This Court's scheduling order as to Defendant's motion to dismiss "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Rouse v. Farmers State Bank of Jewell, Iowa*, 866 F. Supp. 1191, 1198 (N.D. Iowa 1994) (citation omitted). As shown in the foregoing arguments, Defendant has gone far beyond the Court's intended scope.

III.   **Conclusion**

For all the reasons stated above, Plaintiffs ask this Court to deny Defendant's motion in its entirety and sanction Defendant, as appropriate, for its violation of this Court's previous Order regarding the appropriate scope of the motion to dismiss.

Dated: May 11, 2020             Respectfully submitted,

                                /s/ Matthew M. Lavin

**NAPOLI SHKOLNIK PLLC**                    **JULIE W. ALLISON, P.A.**

Matthew M. Lavin, Esq.                      Julie W. Allison, Esq.
360 Lexington Ave, 11th Floor               Anelia P. Shaheed, Esq.
New York, NY 10017                          4601 Sheridan St., Ste. 213
(212) 297-1000/Fax (646) 843-7603           Hollywood, FL  33021
mlavin@napolilaw.com                        (305) 428-1093/Fax (305) 397-2211
                                            julie@allisonlaw.net
**SLOT LAW GROUP, PLLC**                     anelia@allisonlaw.net
Phillip B. Slot, Esq.
MI Bar No. P72960
77 Monroe Center NW, Suite 700
Grand Rapids, MI 49503
(616) 288-0181/Fax (616) 456-5434
pslot@slotlaw.com

18