UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

SERENITY POINT RECOVERY, INC., A
FOREVER RECOVERY, BEHAVIORAL
REHABILITATION SERVICES, BEST DRUG
REHABILITATION,

Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

Defendant.
_____/

Case No. 1:19-cv-00620
Hon. Janet T. Neff

**ORAL ARGUMENT REQUESTED**

NAPOLI SHKOLNIK PLLC
By: Matthew McGill Lavin (1046340)
1750 Tysons Blvd., Ste. 1500
McLean, VA 22102
(212) 397-1000
MLavin@Napolilaw.com

JULIE W. ALLISON, PA
Julie W. Allison
Anelia P. Shaheed
4601 Sheridan St., Ste. 213
Hollywood, FL 33021
julie@allisonlaw.net
anelia@allisonlaw.net

SLOT LAW GROUP, PLLC
Philip B. Slot (P72960)
77 Monroe Center NW, Ste. 700
Grand Rapids, MI 49503
pslot@slotlaw.com

Attorneys for Plaintiffs
_____/

BODMAN PLC
By: Rebecca D'Arcy O'Reilly (P70645)
6th Floor at Ford Field
1901 Saint Antoine Street
Detroit, Michigan 48226
(313) 259-7777
roreilly@bodmanlaw.com

SIDLEY AUSTIN LLP
By: Tacy F. Flint
Kathleen L. Carlson
Elizabeth Y. Austin
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
tflint@sidley.com
kathleen.carlson@sidley.com
laustin@sidley.com

Attorneys for Defendant

**REPLY BRIEF IN SUPPORT OF DEFENDANT BLUE CROSS BLUE SHIELD OF
MICHIGAN'S MOTION TO DISMISS FOR LACK OF STANDING PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………....…ii

ARGUMENT .................................................................................................................................. 1

    I.    Plaintiffs Lack Standing To Sue BCBSM For Benefits Provided By Other Insurers....................................................................................................................... 1

    II.   BCBSM's Unambiguous Anti-Assignment Clauses Bar Claims On Behalf Of BCBSM Customers. ................................................................................................................. 3

   III.  Plaintiffs Have Failed To Exhaust Administrative Remedies, Which Is A Mandatory Prerequisite To Their Claim. ............................................................................... 5

CONCLUSION ............................................................................................................................... 5

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Page(s)**

*Binno v. Am. Bar Ass'n*,
   826 F.3d 338 (6th Cir. 2016) ...............................................................................................2

*Brown v. BlueCross BlueShield of Tennessee, Inc.*,
   827 F.3d 543 (6th Cir. 2016) ...............................................................................................4

*Clark v. DaimlerChrysler Corp.*,
   706 N.W.2d 471 (Mich. App. 2005) ....................................................................................4

*Coomer v. Bethesda Hosp., Inc.*,
   370 F.3d 499 (6th Cir. 2004) ...............................................................................................5

*Ctr. for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of La.*,
   2016 WL 4208479 (E.D. La. Aug. 10, 2016) .....................................................................4

*Ctr. for Restorative Breast Surgery v. Blue Cross Blue Shield of La.*,
   2:11-cv-00806 (E.D. La. Mar. 14, 2016) ............................................................................4

*Daniel v. Eaton Corp.*,
   839 F.2d 263 (6th Cir. 1988) ...............................................................................................3

*Gore v. El Paso Energy Corp. Long Term Disability Plan*,
   477 F.3d 833 (6th Cir. 2007) ............................................................................................2, 3

*Larson v. United Healthcare Ins. Co.*,
   723 F.3d 905 (7th Cir. 2013) ...............................................................................................2

*RAI Care Ctrs. of Mich. I, LLC et al v. Admin. Sys. Research Corp.*,
   1:17-cv-1142 (W.D. Mich. Mar. 17, 2020) .........................................................................3

*Riverview Health Inst. LLC v. Med. Mutual of Ohio*,
   601 F.3d 505 (6th Cir. 2010) ...............................................................................................5

*Select Specialty Hosp. v. Nat'l City Bank Health & Welfare Plan*,
   2008 WL 268901 (W.D. Mich. Jan. 25, 2008) ...................................................................3

*Teagardener v. Republic-Franklin Inc. Pension Plan*,
   909 F.2d 947 (6th Cir. 1990) ...............................................................................................4

*Terry v. Bayer Corp.*,
   145 F.3d 28 (1st Cir. 1998) ..................................................................................................2

*United States v. Ritchie*,
   15 F.3d 592 (6th Cir. 1994) .................................................................................................2

**Other Authorities**

45 C.F.R. § 147.128(a)(1) ..................................................................................................4

Plaintiffs filed this federal suit under ERISA Section 502(a)(1)(B), which allows plan participants and beneficiaries to recover "under the terms of [a] plan." But Plaintiffs concededly are not plan participants or beneficiaries, and they have failed to identify any plan terms that would entitle them to relief—much less relief from BCBSM. Plaintiffs concede that they "do not assert that [BCBSM] issued" whatever unidentified plans covered most of the patients allegedly at issue. (Opp. 7.) Nonetheless, Plaintiffs assert that they have standing to bring this suit based on assignments executed by their patients. But the relevant plans, which BCBSM attached to its Motion, each contain a valid, unambiguous anti-assignment clause. Plaintiffs vaguely assert that the plans BCBSM attached may not be the right ones, but they have not set forth any plan terms whatsoever. And far from explicating what the plans they purport to sue under actually say, Plaintiffs now admit that they are not certain whether or how many of their patients even have ERISA-governed plans, but instead merely "believe that for most of the claims at issue the patients had ERISA plans." (*Id.*) Such a "belief" cannot support a federal suit under Section 502(a)(1)(B).

BCBSM has demonstrated that Plaintiffs have failed to allege standing with respect to the majority of their patients, and with respect to the rest, Plaintiffs' claims are defeated by valid and unambiguous anti-assignment clauses. Plaintiffs also have failed to allege facts demonstrating exhaustion of administrative remedies under the plans. For all of these reasons, the Complaint should be dismissed.

## ARGUMENT

### I.     Plaintiffs Lack Standing To Sue BCBSM For Benefits Provided By Other Insurers.

Plaintiffs concede that a majority of Plaintiffs' patients were not BCBSM customers, but instead customers of *other, entirely separate, insurers*. (Opp. 7.) The BlueCard documents attached to BCBSM's motion demonstrate that for these patients, those other insurers (*i.e.*, their

1

"home" plans)—not BCBSM—had sole power to "adjudicate" any benefit disputes and to determine what benefits were ultimately due, and bore sole financial responsibility for those benefits. (Br. 5-7, 11 (citing App'x 2-3).) While Plaintiffs complain that the BlueCard documents are "beyond the pleadings" (Opp. 7), such evidentiary matter is entirely appropriate on a Rule 12(b)(1) motion, where "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). And Plaintiffs' own Complaint *confirms* that "it is the reimbursement schedule" and "rates" set "by the 'home' plan, which control." (Compl. ¶ 33.)

These facts are determinative. Because BCBSM lacks authority to determine benefits and does not bear financial responsibility for benefits of patients insured by separate entities, no case lies against *BCBSM* with respect to benefits those separate entities supposedly owe to Plaintiffs' patients. ERISA does not permit liability in such a case, *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 842 (6th Cir. 2007),[1] and neither does Article III, *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (no Article III standing where "third parties that are not before the court" were necessary to remedy the claimed injury).

Plaintiffs argue that BCBSM "has exclusive responsibility for payment processing" of claims for patients insured by other entities (Opp. 10), but that is irrelevant because Section 502(a)(1)(B) permits a plan participant to "recover *benefits due . . . under a plan*," and does not

---

[1] Plaintiffs attempt to distinguish *Gore* on the ground that it addressed the liability of an employer rather than a claims-processor. (Opp. at 7.) But *Gore* is not so limited, and numerous other cases reach the same result on different facts. *See, e.g.*, *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013) ("the *obligor* is the proper defendant on an ERISA claim to recover plan benefits") (emphasis in original); *Terry v. Bayer Corp.*, 145 F.3d 28, 35-36 (1st Cir. 1998) (a third-party insurance company retained to process claims was "not amenable to a suit under § 1132(a)(1)(B)") (collecting authorities).

2

authorize suit against an entity that does not adjudicate, determine, or bear financial responsibility for benefits. *See Gore*, 477 F.3d at 842; *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988).[2] Plaintiffs argue that if this is so, the Court should join additional parties under Rule 19 (Opp. at 9). But that is also beside the point. If BCBSM is *not* the proper defendant, it must be dismissed.

## II. BCBSM'S Unambiguous Anti-Assignment Clauses Bar Claims On Behalf Of BCBSM Customers.

Courts in this District have held repeatedly that "an unambiguous anti-assignment provision in an ERISA plan," like the ones in the relevant BCBSM PPO certificates, "precludes a health care provider from enforcing an assignment by a plan beneficiary." D.Ex. 16, *RAI Care Ctrs. of Mich. I, LLC et al v. Admin. Sys. Research Corp.,* 1:17-cv-1142 (Dkt. No. 90), at PageID.1684 (W.D. Mich. Mar. 17, 2020) (citation omitted). As Judge Maloney has observed, a "wealth" of courts have come to this same conclusion. D.Ex. 16, at PageID.1684; *see also Select Specialty Hosp. v. Nat'l City Bank Health & Welfare Plan*, 2008 WL 268901, at *3 (W.D. Mich. Jan. 25, 2008) (collecting authorities).

Plaintiffs make no argument that the anti-assignment provisions in BCBSM's PPO certificates are ambiguous. Instead, they assert that the plan documents BCBSM attached to its motion "do not relate to this case." (Opp. 11.) That is incorrect. Plaintiffs alleged in their Complaint that all health care claims at issue are governed by PPO plans (Compl. ¶ 21), but failed to identify any PPO plan in particular. BCBSM accordingly provided "all versions of BCBSM's PPO certificates," which contain the terms of every possible PPO plan available through BCBSM during the relevant period (Decl. ¶ 4)—each and every one of which contains

---

[2] Nor does Plaintiffs' invocation of the MHPAEA (Opp. 8) support any claim against BCBSM, which Plaintiffs concede does not determine coverage or set "reimbursement schedules" for plans issued by other entities. (Compl. ¶¶ 33-34.)

3

an unambiguous anti-assignment provision. Plaintiffs suggest the attached PPO plan documents do not apply here because Plaintiffs have interpreted them as excluding coverage for treatment they allege that they "verified [] with Defendant." (Opp. 2, 11.) But, again, BCBSM has provided every possible PPO plan that could have covered those of Plaintiffs' patients who were allegedly BCBSM customers, and *all* of them contain anti-assignment clauses. Plaintiffs' hypothesizing about alternative "plans" is not sufficient to survive dismissal under either Rule 12(b)(1) or 12(b)(6). *Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543, 545 n.3 (6th Cir. 2016) ("plaintiff has the burden of proving jurisdiction in order to survive" 12(b)(1) motion regarding standing as assignee under ERISA); *see also Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 953 (6th Cir. 1990) (at the 12(b)(6) stage, a court properly "examine[s] the terms of the Plan" to determine ERISA standing).[3]

Plaintiffs also cite state law contract cases to argue that the anti-assignment clauses here should be set aside because they are supposedly "unconscionable," in that they provide that assignment results in the "termination" of benefits. Plaintiffs articulate no theory for why these provisions should be deemed "so extreme as to shock the conscience," *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471, 475 (Mich. App. 2005) (cited Opp. at 12), nor could they, as multiple courts have held the *exact same* provisions to be both unambiguous and enforceable. *See* Br. at 14.[4] Plaintiffs also suggest that the anti-assignment provisions violate a federal regulation, 45

---

[3] Plaintiffs claim these PPO certificates apply only to fully insured plans (Opp. 2), but cite nothing to support this assertion. While it is true that the PPO certificates serve as the policies of insurance for those groups purchasing insurance, these same PPO certificates are also used by self-funded plans that are not purchasing insurance: as the Declaration makes clear, they are used for *all* of BCBSM's PPO products. (Decl. ¶ 4.)

[4] *See also Ctr. for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of La.*, 2016 WL 4208479, at *5 (E.D. La. Aug. 10, 2016) (enforcing the same anti-assignment clause); *see* D.Ex. 17, Defs.' Jt. Stmt. of Facts; *Ctr. for Restorative Breast Surgery*, 2:11-cv-00806 (Dkt. 499-2), ¶¶ 39-43 (Mar. 14, 2016).

4

C.F.R. § 147.128(a)(1) (Opp. 13), but that regulation bars only *retroactive* rescission of benefits, not termination, and makes explicit that a plan "may cancel coverage." *Id.* § 147.128(a)(3).

Finally, Plaintiffs argue that the anti-assignment provisions have no effect because Plaintiffs have supposedly alleged a "substantial course of dealing, communications, and representations made by Defendant." (Opp. 13.) This is exactly the kind of estoppel-based argument multiple courts, including the 6th Circuit, have held cannot be used to "override the clear terms of plan documents." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 521 (6th Cir. 2010).

### III. Plaintiffs Have Failed To Exhaust Administrative Remedies, Which Is A Mandatory Prerequisite To Their Claim.

Having failed to identify the terms of any plan under which they claim entitlement to benefits, Plaintiffs unsurprisingly fail to allege compliance with plan requirements to exhaust administrative appeals before this suit was filed.[5] *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004). Rather than address what the plans required, Plaintiffs reiterate that *they* repeatedly contacted BCBSM in various ways that are unrelated to satisfying the administrative appeal process under the plans. (Opp. 16.) This is insufficient to satisfy the threshold requirement for a claim under § 502(a)(1)(B) that participants exhaust administrative appeals.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

---

[5] Plaintiffs' conclusory assertion that they "filed the necessary appeals" (Opp. 5) is devoid of any reference to a plan document and is unsupported by any fact that could be construed as initiating, much less satisfying, the unambiguous administrative appeal procedure required by the PPO plans. (*See* Br. at 19-20.)

5