UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SERENITY POINT
RECOVERY, INC., et al.,

    Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

    Defendant.
_____/

Case No. 1:19-cv-620

HON. JANET T. NEFF

## OPINION AND ORDER

Now pending before the Court is "Blue Cross Blue Shield of Michigan's Motion to Dismiss for Lack of Standing Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)" (ECF No. 30). The motion argues that no Employee Retirement Income Security Act ("ERISA") jurisdiction exists under 29 U.S.C. § 1132, and hence, no federal question jurisdiction exists over this suit under 28 U.S.C. § 1331. For the reasons that follow, the motion is denied.

### I.     BACKGROUND

This is an insurance dispute. Plaintiffs Serenity Point Recovery, Inc.; A Forever Recovery, Inc.; Behavioral Rehabilitation Services, Inc.; and Best Drug Rehabilitation, Inc. are Michigan substance abuse treatment providers ("Plaintiffs"). They provide specialized treatment and care, including long-term care, for patients suffering from addiction, a population they describe as unique and vulnerable (ECF No. 1 at PageID.5). On July 31, 2019, Plaintiffs filed a thirteen-count Complaint in this Court against Blue Cross Blue Shield of Michigan ("BCBSM"), alleging a single federal claim: Count I – ERISA Action for Unpaid Benefits (as attorney-in-fact and assignee of

those patient claims subject to ERISA) (*id.* at PageID.21).

Plaintiffs summarize their claims in the case as "essentially one of accounting and collections" involving "the insurance benefits of more than 4,200 patients whose claims for benefits were all subject to direct processing by BCBSM" (Plaintiffs' Response in Opposition, ECF No. 32 at PageID.248, 251). Plaintiffs seek relief in the form of effective processing and reimbursement of the patient claims from BCBSM (*id.*).

Plaintiffs' claim under ERISA, 29 U.S.C. §§ 1001(b), 1132(a), is based on a theory of derivative standing: "A provider can obtain derivative standing if a valid assignment of benefits grants provider standing for ERISA purposes" (ECF No. 1 at PageID.23, citing *Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 547 (6th Cir. 2016)). The ERISA claim maintains that most of the patient claims at issue in this case are subject to health plans governed under ERISA and that as a claims administrator Defendant BCBSM breached the terms of these plans and its fiduciary duties by incorrectly processing claims, obstructing the processing of claims, refusing to pay claims, and denying benefits (*id.* at PageID.24).[1]

The Complaint describes Defendant BCBSM as part of the Blue Cross Blue Shield ("BCBS") conglomerate of 36 independent, community-based and locally operated companies nationwide (ECF No. 1 at PageID.10). Through the BlueCard program, the local BCBS entity, here BCBSM, in Michigan, where the providers are located, handles claims for patients from other BCBS entities (*id.*).[2] According to Plaintiffs, the "local" BCBS plan is "a single point of contact" "responsible for any provider-related functions such as all claims processing, payment, customer

---

[1] "Only Defendant has knowledge of which plans herein are subject to ERISA" (ECF No. 1 at PageID.21).
[2] "Less than 10% of the insurance plans at issue are BCBSM plans, the remaining 90% are plans from other BCBS entities" (Joint Notice, ECF No. 18 at PageID.79).

service issues, adjustments, and appeals, regardless of which BCBS plan a patient may have," even as the "local" plan is required to pay benefits per the terms of the "home" plan reimbursement schedule (*id.*).[3]

Plaintiffs allege that they are out-of-network ("OON")/non-participating providers for BCBSM and BCBS plans nationwide (*id.* at PageID.5).[4] They further allege that the patients whose claims underlie this lawsuit are members of Preferred Provider Organization ("PPO") health plans, which provide OON benefits for the treatment of substance abuse and mental health disorders, accessible nationwide through the BlueCard program (*id.* at PageID.10-11)

The Complaint specifically alleges that Plaintiffs have faced "ongoing and continuous claims processing and payment issues" with BCBSM for a period of more than 4 years (*id.*). As the "terms of all ERISA plans include the substantive requirements of ERISA and the Mental Health Parity and Addiction Equity Act (MHPAEA)," the Complaint further alleges that BCBSM's rates are not commercially reasonable and are designed to eliminate and/or reduce the number of providers in the substance abuse and mental health treatment industry (*id.* at PageID.20, 22).

Plaintiffs claim that the issues they allege were evidenced through their patient intake and claims process (*id.* at PageID.6). Plaintiffs allege that before patients are admitted to Plaintiffs' facilities there is a verification of benefits (VOB) process involving a documented phone call to the health plan, such as BCBSM, concerning reimbursement rates and out of pocket costs. (*id.*).

---

[3] "It was later discovered by Plaintiff [Best Drug Rehabilitation, Inc.] and disclosed by Defendant that the real issue had been that BCBSM did not have staff, processes or systems in place to accept claims for out-of-state members with OON [out-of-network] benefits and process them through the Blue Card program, so instead it denied the claims wholesale" (ECF No. 1 at PageID.12).
[4] "Some patients treated by Plaintiffs were Michigan residents and had coverage directly through BCBSM," while "[o]ther patients had health coverage from other BCBS entities in other parts of the country" (*id.* at PageID.10-11).

At the time of admission and during a patient's stay, there is a pre-authorization/utilization review (UR) process, during which medical information is provided to the health plan regarding a patient, and the plan makes specific representations regarding the level and duration of care which it authorizes (*id.*). Plaintiffs allege that they maintain meticulous records of all VOB and UR calls and rely on the representations made by insurers during these phone calls (*id.* at PageID.9).

As part of its process, all patients who receive treatment at Plaintiffs' facilities "execute a notarized, durable power of attorney and endorse a separate assignment of benefits form to the respective facility, permitting Plaintiffs to stand in the shoes of their patients with the same rights to appeal, litigation and receive payment under the health plan as the patients themselves" (*id.*). Plaintiffs allege that all patients whose claims underlie this lawsuit executed a durable power of attorney and an assignment of benefits (*id.*). At this stage of this litigation, however, Plaintiffs posit that only Defendant knows which plans apply to specific patient claims and are covered under ERISA, making dismissal premature (ECF No. 1 at PageID.21; ECF No. 32 at PageID.249).[5]

On August 26, 2019, Defendant filed a request for a pre-motion conference request, to which Plaintiffs responded. Following a pre-motion conference with the parties and a Joint Notice submitted by the parties on a plan for proceeding and resolving the ERISA claim (ECF No. 17 at PageID.77), the Court ordered the parties to "exchange power of attorney and anti-assignments exemplars" and set a briefing schedule on the motion to dismiss (ECF No. 21 at PageID.122-123). According to Plaintiffs, the exemplars are insufficient to decide the ERISA claim (ECF No. 32 at PageID.249, 252-253).[6]

---

[5] The Court decides this motion based on the exemplars Defendant offered which it believes are sufficient to justify dismissal.
[6] BCBSM offers that it "provided 'all versions of BCBSM's PPO certificates,'" which contain the terms of every possible PPO plan available through BCBSM during the relevant period" (ECF No. 33 at PageID.272).

4

Defendant contends, however, that the facts and narrative Plaintiffs recite are inconsequential because Defendant grounds its motion on the effect of the language in the PPO plans,[7] governed by PPO Certificates,[8] on Plaintiffs' claims (ECF No. 31 at PageID.229-230, 236). According to Defendant, these PPO Certificates contain identical: (1) anti-assignment clauses and (2) an administrative appeals process, which makes an exhaustion requirement applicable to the patient claims at issue in this lawsuit.

The 2017 Simply Blue Group Benefits Certificate LG (for large, insured group customers), for example, provides as to "Assignment":

> Benefits covered under this certificate are for your use only. They cannot be transferred or assigned. Any attempt to assign them will automatically terminate all your rights under this certificate. You cannot assign your right to any payment from us, or for any claim or cause of action against us, to any person, provider, or other insurance company.
>
> We will not pay a provider except under the terms of this certificate.

---

[7] Plaintiffs state that "[w]hether any of the sample plans produced by Defendant actually relate to any of the actual Plaintiffs in this case remains to be seen. Plaintiffs requested that Defendants identify which Plaintiffs the plans related to and that request was ignored. Whether any of the plans produced by Defendant actually related to any of the Plaintiffs is still an open question of fact. These unidentified 'anonymous' plans should not be relied upon in support of a motion to dismiss" (ECF No. 32 at PageID.249).

[8] The Complaint states that the ERISA "cause of action seeks to recover benefits due to Plaintiff under the terms of those BCBS health plans which are governed by ERISA" (ECF No. 1 at PageID.23). The Court accepts Defendant's premise that Plaintiffs incorporated the plans, their language and the meaning of their terms, into the Complaint (ECF No. 31 at PageID.227, 232, citing *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 949 (6th Cir. 1990)). "The Certificates setting forth plan terms are incorporated into the Complaint because they are referenced throughout the Complaint and [sic] central to Plaintiffs' claims" (ECF No. 31 at PageID.227, citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)). Plaintiffs attempt to make a finer distinction: "[w]hile the insurance plans themselves are incorporated into the Complaint for the Plaintiffs' ERISA claims, the BlueCard documents are not insurance plans, they are completely outside of the pleading. Plaintiffs have not had the opportunity to engage in discovery regarding 'BlueCard' operations and the actions taken by 'host' and 'home' plans" (ECF No. 32 at PageID.252-253). On a 12(b)(1) motion such as this, the Court considers the BlueCard documents but not as "gospel truth for what actually occurred" (*id.* at PageID.253); the Court also considers the parties' course of dealing.

(ECF No. 34-5 at PageID.576). The PPO Certificate also provides as to "Grievance and Appeals Process" involving an "adverse benefit decision" that: "You may authorize another person, including your physician, to act on your behalf at any stage in the standard review process" (*id.* at PageID.577). And as to "Requesting a Standard Pre-Service Review" the PPO Certificate provides that "[y]ou may make the request yourself, or your doctor or someone else acting on your behalf may make the request for you" (*id.* at PageID.581). Plaintiffs Complaint alleges significant interchange with Defendant about their patients' claims (ECF No. 1 at PageID.10-20).

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Specifically, Defendant makes three arguments in its motion: (1) Plaintiffs lack standing to sue BCBSM for benefits provided for other insurers; (2) the anti-assignment clauses in the PPO Certificates bar claims on behalf of BCBSM customers; and (3) Plaintiffs failed to exhaust administrative remedies, which is a prerequisite to making their claim (Def.'s Br. in Support of Motion to Dismiss, ECF No. 31 and Def.'s Reply Br., ECF No. 33). Plaintiffs responded (ECF No. 32).

The motion is fully briefed and ripe for decision. Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented in the motion. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

Defendant alleges that Plaintiffs lack standing under ERISA and Article III. "[S]tanding is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). "When subject matter jurisdiction is

challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

Defendant moves to dismiss for lack of standing both facially and factually (ECF No. 31 at PageID.232, citing *Barnes v. Blue Cross & Blue Shield of Mich.*, No. 03-CV-40025, 2009 WL 909551, at *5 (E.D. Mich. Mar. 31, 2009)). Where there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists. *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015).

"To establish Article III standing, the plaintiff must allege that: (1) he has suffered an injury-in-fact that is both '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) the injury is fairly traceable to the defendant's conduct; and (3) it is likely that the injury will be redressed by a favorable decision." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). On a motion to dismiss such as this, Plaintiffs must prove that this Court has jurisdiction over their claim and that the complaint contains sufficient factual matter to state a claim for relief that is plausible on its face. *See Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014).

Defendant also argues for dismissal under Fed. R. Civ. P. 12(b)(6) based on Plaintiffs' alleged failure to exhaust administrative requirements under ERISA. For this aspect of the motion, the Court accepts all the Plaintiffs' factual allegations as true and construes the complaint in the light most favorable to the Plaintiffs; the Complaint will not be dismissed unless it appears beyond

doubt that the Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).[9]

## B. Discussion

*1. Standing to Sue Defendant BCBSM for Benefits Provided by Other BCBS Entities*

Defendant argues that Plaintiffs' ERISA claim fails for lack of standing because Plaintiffs' claim cannot be redressed by Defendant BCBSM, since Defendant only processes patient claims from other BCBS entities, Defendant does not adjudicate claims to benefits for other entities (ECF No. 31 at PageID.224, 232-234). According to Defendant, it is not the proper defendant in this action: "only the entity actually responsible for 'control[ling] administration of a plan' is the 'proper party defendant in an action concerning benefits' under [ERISA] Section 502(a)(1)(B)" (ECF No. 33 at PageID.272; ECF No. 31 at PageID.232-233, citing *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 842 (6th Cir. 2007)).

Plaintiffs respond that the relationship between the "host" and "home" plans has not been established at this stage of the litigation because they have not had the opportunity to engage in discovery on the nature of the relationship (ECF No. 32 at PageID.253). Plaintiffs contend, moreover, that during their meetings with Defendant's representatives at no time did Defendant direct them to individual "home" plans regarding their claims (*id.* at PageID.255).

Plaintiffs further request that, if necessary, the Court should permit them to join the "home" plan administrators to the action under Federal Rule of Civil Procedure 19 (*id.* at PageID.256). Nevertheless, Plaintiffs assert that the allegations in the Complaint are sufficient at the pleading

---

[9] Some courts treat the exhaustion requirement in an ERISA case as a nonjurisdictional affirmative defense that a defendant must plead, where a Fed. R. Civ. P. 56 summary judgment motion is the proper vehicle for considering the claim, not Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Beamon v. Assurant Emp. Benefits*, 917 F. Supp. 2d 662, 666 (W.D. Mich. 2013). The Sixth Circuit has not directly addressed this issue.

stage "to support the position that Defendant was acting as a fiduciary [under ERISA] for all of the claims and not merely performing 'ministerial functions'" (*id.*).

The Court first determines that Defendant, the insurer BCBSM, is an ERISA fiduciary for some of the benefit plans at issue in this lawsuit. 29 U.S.C. § 1132. Defendant repeatedly argues that most significantly for its case is the fact that Plaintiffs concede that 90 percent of claims underlying their Complaint relate to patients who were not covered by BCBSM but by some other Blue Cross and/or Blue Shield carrier (ECF No. 31 at PageID.224, 232, ECF No. 33 at PageID.274). Defendant concedes in making this argument, however, that even if a distinction must be drawn between "home" and "host" plans when considering a claim for ERISA liability, BCBSM is an ERISA fiduciary for some of the claims at issue (ECF No. 31 at PageID.233). Specifically, following the logic of Defendant's argument, Plaintiffs would still have a claim against Defendant where Defendant served as the "home" plan because BCBSM directly adjudicated the patients' claims to benefits under those plans (*id.* at PageID.233). Therefore, the Court finds the argument unavailing to dismiss the claim on this ground.

The Court further finds that the terms of the plans do not exclude BCBSM as a fiduciary for the "host" plans. Defendant essentially argues that by the terms of the ERISA plans, where BCBSM is a "host," it does not make benefits decisions: it does not control what benefits are paid or denied, and it does not control the administration of the plan, and hence, it is not a fiduciary under ERISA for those plans (*id.* at PageID.232-233).

Leaving aside the fact that Plaintiffs include a theory of recovery under ERISA for processing failures (ECF No. 32 at PageID.256; ECF No. 1 at PageID.24), the Court can say as a matter of law that Defendant's argument fails. Defendant's exhibits attached to the motion include the "BlueCard network program documents": the Inter-Plan Programs Policies and Provisions

(ECF No. 34-12) and BlueCross BlueShield Association's claim delivery and claim processing action information, which describe the internal policy regarding the inputs and outputs shared by the host and home plan:

> Applying the pricing rule and local condition codes that explain to the Control/Home Plan how to calculate member and Plan liabilities, and the conditions, if any, that must be met to capture the discount. The effect of any preauthorization requirement (resulting in a reduced allowance) in the Par/Host Plan contract with the provider would be incorporated into the discount so the member is held harmless.
>
> . . .
>
> Determining payment direction for the claim. If the claim is payable to the member, the Control/Home Plan will pay the member. If the claim is payable to the provider, the Par/Host Plan will pay the provider based on adjudication results from the Control/Home Plan.
>
> . . .
>
> The Control/Home Plan adjudicates claims received from the Par/Host Plans by determining whether the member is eligible, which services are covered and the status of the member's liability for deductibles, coinsurance and copayments. The Control/Home Plan must recognize and process claims based on information the Par/Host Plan transmits. In addition, the Control/Home Plan applies its medical policy to the claim.
>
> . . .
>
> The Control/Home Plan adjudicates the claim, determining which services are eligible and covered. Control/Home Plan input these adjudication results, along with Par/Host Plan pricing information and condition codes, into the ITS UPF calculator, or its equivalent, to calculate member and Plan liabilities. The Plan liability is the amount approved for payment to the provider.

(ECF No. 34-14 at PageID.1102-1104). Based on the BlueCross BlueShield Association's Claim Delivery information the Court disagrees with Defendant's assertion that the home plans, not Defendant, "had sole power to 'adjudicate' any benefit disputes and to determine what benefits were ultimately due, and bore sole financial responsibility for those benefits" (ECF No. 33 at PageID.271). Other BCBS entities were not the sole fiduciary who controlled the claims, where

BCBSM served as a host plan, because BCBSM was also responsible for claim inputs, pricing and discount information, and payment according to the Claim Delivery information. *See El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d at 842; *DeLuca v. Blue Cross Blue Shield of Michigan*, 628 F.3d 743, 747-48 (6th Cir. 2010) (internal quotations and citations omitted) (emphasis original) ("in determining liability for an alleged breach of fiduciary duty in an ERISA case, the courts must examine the conduct at issue to determine whether it constitutes 'management' or 'administration' of *the plan,* giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards."). Therefore, the Court will not dismiss Count I on this ground.

*2. Whether Plaintiffs, Providers, Have Standing to Sue under ERISA and the Terms of the Plan Certificates*

Both parties acknowledge that ERISA's civil enforcement provision confers direct standing to bring suit for recovery of benefits on plan participants and beneficiaries (ECF No. 31 at PageID.234-235; ECF No. 32 at PageID.251). *See* 29 U.S.C. § 1132(a)(1)(b); *Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543, 545 (6th Cir. 2016) (quoting 29 U.S.C. § 1002(8)) ("A beneficiary is defined as 'a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.'"). Both parties also acknowledge that a healthcare provider does not qualify as a statutory beneficiary under ERISA absent an assignment of benefits. *See id.* at 546 (a provider obtains standing to sue under ERISA when a patient conveys a valid assignment of benefits under the plan). The parties assume that the patients whose claims are at issue executed assignments of benefit and durable power of attorneys that, if effective, would confer derivative standing on the relevant healthcare provider (Assignment of Benefits and Durable Power of Attorney Exemplar, ECF No. 1-1 at PageID.46-51). *See id.*; *e.g.*, *Henry Ford Health Sys. v. Assurant Health*, No. CIV.A. 08-CV-11270, 2008

11

WL 1826026, at *1 (E.D. Mich. Apr. 23, 2008).

Defendant argues, however, that the assignment of benefits as they relate to patient claims in this case were invalid because the patient ERISA plans administered by Defendant were governed by PPO Certificates that contain "an express and unambiguous anti-assignment clause" (ECF No. 31 at PageID.236). Defendant further maintains that anti-assignment provisions in the ERISA context are generally enforced (*id.* at PageID.225, 236, citing *Riverview Health Inst. LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 522 (6th Cir. 2010); *Luckey v. Blue Cross Blue Shield of Michigan*, No. 11-11500, 2012 WL 2190833, at *3 (E.D. Mich. June 14, 2012)). Furthermore, even if Plaintiffs are acting as attorney-in-fact for the ERISA participants, according to Defendant, the plan providers cannot bring a suit in their own name, they must bring suit on behalf of their patients, the real parties in interest under ERISA (*id.* at PageID.238-239).

Plaintiffs respond that the plans at issue in this suit are not even properly before the Court because the plans Defendant produced contain language that BCBSM does not pay for mental health or substance abuse treatment facilities, and Plaintiffs alleged in their Complaint "that they verified benefits with Defendant prior to rendering any services" (ECF No. 32 at PageID.258).[10] Plaintiffs additionally assert that the anti-assignment provision in the PPO Certificates should be deemed void for unconscionability because there is a "well-established practice across the healthcare industry for an out-of-network provider to have patients execute an assignment of benefits," whereas an attempted assignment under the anti-assignment provision "triggers an absolute forfeiture and recission of benefits," which Plaintiffs maintain violates public policy and

---

[10] "Defendant has produced only BCBSM plans and failed to produce *any* plan documents from self-funded plans. All of the plans produced by Defendant were 'fully-insured' plans and whether such plans are governed by ERISA or subject to its safe-harbor provision is a factual question that cannot be resolved at the pleading stage" (ECF No. 32 at PageID.258-259).

12

the Public Protection and Affordable Care Act's prohibitions on recission (*id.* at PageID.259-260).

Finally, Plaintiffs argue that should the Court find the anti-assignment provision applicable and valid, defeating Plaintiffs' derivative standing for some or all the claims, then the appropriate remedy should be to allow the Plaintiffs "to substitute themselves as representatives of the patients based on valid powers of attorney that were obtained" (*id.* at PageID.261).

The Court begins its analysis by considering ERISA's purpose. Congress's stated purpose in enacting ERISA was to "protect [ ] the interests of participants in employee benefit plans." *Brown*, 827 F.3d at 547 (quoting 29 U.S.C. § 1001(b). ERISA "provides that fiduciaries shall discharge their duties with respect to a plan . . . 'for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan.'" *Pegram v. Herdrich*, 530 U.S. 211, 223-24 (2000); § 1104(a)(1)(A).

With this purpose in mind, the Court must consider the plain meaning of the ERISA plan provisions—the exemplars Defendant believes entitle it to a dismissal of the federal claim. *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 556 (6th Cir. 1998); *Cassidy v. Akzo Nobel Salt, Inc.,* 308 F.3d 613, 618 (6th Cir.2002) (quoting *Lake v. Metro. Life Ins.,* 73 F.3d 1372, 1379 (6th Cir.1996)) ("In applying this 'plain meaning analysis,' the court 'must give effect to the unambiguous terms of an ERISA plan.'").

The "anti-assignment provision" found in the exemplars[11] distinguish between "benefits"[12] and the "right to any payment" or "claim":

> Benefits covered under this certificate are for your use only. They cannot be transferred or assigned. Any attempt to assign them will automatically terminate

---

[11] The Court notes that the language differs slightly across the "exemplars" even as it relates to the anti-assignment provision.

[12] A beneficiary is defined under ERISA as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

13

> all your rights under this certificate. You cannot assign your right to any payment from us, or for any claim or cause of action against us, to any person, provider, or other insurance company.

(Simply Blue Group Benefits Certificate LG (for large, insured group customers) ECF No. 34-5 at PageID.576). The healthcare certificate also provides regarding the "Grievance and Appeals Process":

> You may authorize another person, including your physician, to act on your behalf at any stage in the standard review process.
>
> . . .
>
> You may make the request yourself, or your doctor or someone else acting on your behalf may make the request for you.

(*id.* at PageID.577, 581). The Complaint also alleges that Plaintiffs, providers, indeed acted on behalf of their patients in the review process with BCBSM to increase access to healthcare (ECF No. 1 at PageID.6-9, 11-17).[13] The Complaint further alleges a substantial course of dealing, in terms or review, processing, and payment, between Defendant BCBSM and Plaintiffs, providers,

---

[13] ERISA derivative standing is federal common law under the statute and assignment furthers ERISA's purposes. *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). The Sixth Circuit in *Brown*, 827 F.3d at 547 considered with approval the following discussion by the Third Circuit on ERISA's pro-assignment policy: "It does not seem that the interests of patients or the intentions of Congress would be furthered by drawing a distinction between a patient's assignment of her right to receive payment and the medical provider's ability to sue to enforce that right. The value of such assignments lies in the fact that providers, confident in their right to reimbursement and ability to enforce that right against insurers, can treat patients without demanding they prove their ability to pay up front. Patients increase their access to healthcare and transfer responsibility for litigating unpaid claims to the provider, which will ordinarily be better positioned to pursue those claims. . . . These advantages would be lost if an assignment of payment of benefits did not implicitly confer standing to sue. . . . As the United States Court of Appeals for the Fifth Circuit observed, if providers' status as assignees does not entitle them to federal standing against [insurers], providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. Either alternative . . . would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them 'up-front.'" *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d at 373-74 (internal quotations and citations omitted).

which Defendant has not rebutted with other evidence (ECF No. 1 at PageID.10-13, ECF No. 32 at PageID.269).[14] On these facts, the Court will, therefore, not enforce the anti-assignment provision. *See, e.g.*, *Luckey*, 2012 WL 2190833, at *3 (for the proposition that an insurer is estopped from relying on anti-assignment provision where it dealt with and paid a provider directly for claims submitted on behalf of patient). The motion to dismiss is denied on this ground.

3. Exhaustion of Administrative Remedies

Defendant states that Plaintiffs' ERISA claim must also be dismissed because Plaintiffs have failed to exhaust the plan's administrative procedures.[15] "ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides a contract-based cause of action to participants and beneficiaries to recover benefits, enforce rights, or clarify rights to future benefits under the terms of an employee benefit plan." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998). As can be seen from the scope of the statute, the application of an administrative exhaustion requirement is discretionary with the district court and is enforceable to "enable[] plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Coomer v. Bethesda Hosp., Inc.*,

---

[14] The Claim Delivery documents BCBSM provided state that some claims are payable directly to the provider: "If the claim is payable to the member, the Control/Home Plan will pay the member. If the claim is payable to the provider, the Par/Host Plan will pay the provider based on adjudication results from the Control/Home Plan" (ECF No. 34-14 at PageID.1102). Defendant concedes at one point in its brief that "*Plaintiffs* have not followed the 'formal grievance and appeals' process set out by BCBSM. . . . In order to formally appeal, *Plaintiffs* were required to submit a written statement to the BCBSM appeals unit and participate in an in-person or telephonic conference before they would receive a final written decision by BCBSM" (ECF No. 31 at PageID.241) (emphasis added). There is sufficient evidence in the record to show that Defendant treated Plaintiffs as a de facto beneficiary or participant and/or waived the anti-assignment provision for the patient claims at issue.

[15] The Court acknowledges Plaintiffs' assertion (ECF No. 32 at PageID.264-265) that Defendant went beyond the scope of the Court's January 13, 2020 briefing order, which stated that "the Court will proceed with Defendant's proposed motion to dismiss, limited to the issue of Plaintiffs' standing to pursue the ERISA claims" (ECF No. 21 at PageID.122).

15

370 F.3d 499, 504 (6th Cir. 2004) (quoting *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000)); *see also Fallick*, 162 F.3d at 419 ("a court is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate"). The exhaustion requirement only applies, however, to the enforcement of a plan's contractual terms. *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 565 (6th Cir. 2017).

Defendant argues that Plaintiffs' Complaint points to 22,000 claims that were allegedly underpaid and/or improperly processed, but there is no specific information "about any patient claims or why Plaintiffs believe each claim was not properly resolved under the terms of the plan" (ECF No. 31 at PageID.240).

Defendant, however, fails to respond to Plaintiffs' argument that their federal claim pertains in part to Defendant's claims processing methodology, which Plaintiffs allege was not reasonable under ERISA (ECF No. 32 at PageID.264). 29 C.F.R. § 2560.503-1(l)(1) ("a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim"); *Fallick*, 162 F.3d at 421 ("this [c]ourt is certain that Nationwide will not seriously reconsider its methodology. . . . Consequently, exhaustion of administrative remedies in the instant matter would be futile."); *Durand v. Hanover Ins. Group, Inc.*, 560 F.3d 436, 439 (6th Cir. 2009) (for the proposition that a challenge to a plan's methodology or its legality is not subject to the administrative exhaustion requirement and falls squarely within "the expertise of the courts").

Defendant also fails to respond to Plaintiffs' specific allegations of exhaustion and futility (ECF No. 32 at PageID.263). 29 C.F.R. § 2560.503-1(c)(2) ("[t]he claims procedures do not

contain any provision, and are not administered in a way, that requires a claimant to file more than two appeals of an adverse benefit determination prior to bringing a civil action under section 502(a) of the Act"). In a case a such as this, it is sufficient to show that the return to administrative remedies would be useless. *Fallick*, 162 F.3d at 420-21; *Hill*, 409 F.3d 710, 719 (6th Cir. 2005) (reasonable to infer from BCBSM's claims-handling procedures "that BCBSM has already reached a determination on the issue that would be presented in administrative-review proceedings"). Although Plaintiffs resort to collective pleading of the patient claims, Plaintiffs do not need to specifically "address what the plans require[]" and how and in what ways they "satisf[ied] the administrative appeals process under the plans" (ECF No. 33 at PageID.274), where Plaintiffs specifically allege six separate occasions in which BCBSM failed to properly process and pay claims (ECF No. 32 at PageID.263, ECF No. 1 at PageID.17-19).[16]

Moreover, to the extent Plaintiffs fail to address themselves to contractual violations or "enforcing the terms of a plan" and the plan's requirements, as Defendant argues (ECF No. 33 at PageID.274), that failure is not fatal to Plaintiffs' case because Plaintiffs also bring this action to "assert rights granted by the federal statute," and "ERISA plan participants or beneficiaries do not need to exhaust internal remedial procedures before proceeding to federal court when they assert

---

[16] "You do not have to exhaust our internal grievance process before requesting an external review in certain circumstances:
- We waive the requirement
- We fail to comply with our internal grievance process

    - Our failure to comply must be for more than minor violations of the internal grievance process.
    - Minor violations are those that do not cause and are not likely to cause you prejudice or harm"

(2019 Simply Blue Group Benefits Certificate LG (for large, insured group customers) ECF No. 34-7 at PageID.771).

statutory violations of ERISA." *Hitchcock*, 851 F.3d at 564.

The Complaint alleges a fiduciary duty claim against BCBSM for obstructing claims and refusing to pay reasonable or customary rates (ECF No. 1 at PageID.24-25). *See id.* at 564-65 (quoting 29 U.S.C. § 1104(a)(1)(B)) ("Section 1104 of ERISA guarantees that a fiduciary of an employee benefit plan will discharge his or her duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use.'").  Therefore, the motion to dismiss is denied on this ground as well.

The motion to dismiss is thus denied on all three grounds.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (ECF No. 30) is DENIED.

Dated: September 24, 2021

/s/ Janet T. Neff
JANET T. NEFF
United States District Judge